IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| GLORIA D. FORTE, | ] | |
| Plaintiff, | ] | |
| v. | ] | CV-02-BE-2103-W |
| GREEN COUNTY BOARD OF EDUCATION, et. al., | ] | |
| Defendants. | ] | |

**ENTERED**
MAR 1 8 2004

MEMORANDUM OPINION

I. INTRODUCTION

This case is before the court on a motion for summary judgment (doc. # 80 ) filed by defendants Green County Board of Education ("Board"), former superintendent Carol Morrow ("Morrow"),[1] who is sued in her individual capacity, and current superintendent Eli Seaborn ("Seaborn"), who is sued in his official capacity. After briefing by both sides, the court held a hearing on March 11, 2004. For the reasons stated on the record at the hearing on the motion for summary judgment and summarized below, the court finds that the defendants' motion for summary judgment is due to be granted in its entirety.

Plaintiff Gloria D. Forte ("Forte") alleges violations of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq., (Title VII); 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; 42 U.S.C. § 1981; and various provisions of Alabama law.[2] The Board also filed a two-

---

[1] Morrow resigned as Superintendent on November 29, 2002.

[2] Specifically, breach of contract, promissory estoppel, wrongful dismissal, and two counts of conversion.

1

count counterclaim under Alabama law for what it describes as Forte's failure to perform pursuant to a supplemental services contract. The court has jurisdiction of this case under 28 U.S.C. § 1331 pursuant to its federal question jurisdiction and has the ability to exercise supplemental jurisdiction of the state law claims and counterclaims pursuant to 28 U.S.C. § 1367.

Plaintiff began her employment with the Board during the 1990-1991 school year as a ten-month business education teacher in the vocational education department at Greene County High School. Sometime prior to the beginning of the 2000-2001 school year, Forte and Morrow began discussing the possibility of plaintiff working as the Board's part-time technology coordinator in addition to performing her full-time teaching duties.[3] On June 30, 2000, the Board appointed Forte as part-time technology coordinator for the 2000-2001 school year and voted to compensate plaintiff for her duties as system-wide technology coordinator in an amount equal to one month of plaintiff's salary as a vocational education teacher. Approximately three months later in September 2000, the Board approved an increase in Forte's part-time technology coordinator salary in an amount equal to two months of the plaintiff's salary as a vocational education teacher. On December 12, 2001, plaintiff agreed to serve as the technology coordinator for the 2001-2002 school year.

Forte's allegations of discrimination stem from her appointment as part-time technology coordinator and her dissatisfaction with the compensation provided to her by the Board. Forte alleges that (1) the Board treats similarly-situated full-time male teachers who provide supplemental services in addition to their teaching duties differently from similarly-situated female

---

[3]The parties disagree about the exact nature of their conversations during this period. However, this disagreement is immaterial to the plaintiff's Title VII and 42 U.S.C. § 1983 disparate treatment, retaliation, and constructive discharge claims.

teachers; (2) Morrow's unilateral decision to withhold her part-time technology coordinator salary in September and October 2001 was in retaliation for her decision to file a grievance with the Board; and (3) Morrow's decision to withhold her part-time technology coordinator salary in September and October 2001 was tantamount to a constructive discharge.

Summary judgment is an integral part of the Federal Rules of Civil Procedure and allows a trial court to decide cases when no genuine issues of material fact are presented and when the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The parties' disagreement on each and every fact is not significant; the law requires only that "there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also Celotex v. Catrett,* 477 U.S. 317, 327 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 251-52. Mere speculation is insufficient to create an issue of fact and defeat a properly-supported motion for summary judgment. *See Ramsey v. Leath*, 706 F.2d 1166, 1169-70 (11th Cir. 1983).

## II. DISCUSSION[4]

In their motion for summary judgment, the defendants urge the court to dismiss Forte's disparate treatment, retaliation, and constructive discharge claims pursuant to 42 U.S.C. § 1983 and Title VII.[5] According to the defendants, the evidence in this case does not create a genuine issue of

---

[4] Based on the lengthy and through presentation of the facts in the parties' briefs and at oral argument, the court does not include a separate recitation of the facts in this Memorandum Opinion.

[5] In the Eleventh Circuit, "When section 1983 is used as a parallel remedy for violation of [Title VII] the *elements* of the two causes of action are the same." *Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1231 n. 4 (11th Cir.1998).

material fact regarding any of these claims and entitles them to judgment as a matter of law. At oral argument, plaintiff's counsel indicated that Forte was abandoning her claims under 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 1981. Based on plaintiff's abandonment of these claims, the court concludes that the defendants' motion for summary judgment is due to be granted on the plaintiff's claims under 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 42 U.S.C. § 1981.

Having concluded that the above-referenced claims are due to be dismissed as a matter of law, the court next turns to the remaining disparate treatment, retaliation, and disparate treatment claims pursuant to 42 U.S.C. § 1983 and Title VII. Based on its review of the record, the applicable standard of review, and the relevant case law authority, the court concludes that the defendants' motion for summary judgment on the plaintiff's Title VII and 42 U.S.C. § 1983 disparate treatment, retaliation, and constructive discharge claims are also due to be granted.

### A. Disparate Treatment Claim

Plaintiff contends that, unlike full-time male teachers who provided supplemental services to the Board, she was required to work forty hours per week during the summer and after school each day to receive her supplemental services salary. According to Forte, full-time teacher and coach Cleveland Austin ("Austin") and full-time teacher, bus-driver, and summer maintenance mechanic, Willie Garnett ("Garnett') are valid comparators. Although acknowledging that Austin and Garnett received less compensation for the supplemental services they provided to the Board,[6] Forte argues that she was nevertheless subject to disparate treatment based on what she characterizes as the disproportionate amount of time that she had to devote to her part-time

---

[6]Forte couches her disparate treatment claim as one based on the denial of favorable "conditions of employment" and not disparate pay because of undisputed facts indicate that she was paid $710.61 per month for her supplemental duties and was the highest paid teacher who rendered additional services to the Board.

technology coordinator duties after school and during the summers to receive her supplemental services salary.

The success of the defendants' motion for summary judgment depends on the plaintiff's ability to create a genuine issue of material fact about whether she is similarly-situated to the above-referenced male comparators. Consequently, the salient issue is whether Forte can create a question of fact about whether similarly-situated male employees received more favorable terms under which to perform their supplemental services contracts. To establish a prima facie case of sex discrimination in the terms and conditions of employment, Forte must demonstrate that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside the protected class more favorably; and (4) she was qualified to do the job. *Montgomery v. City of Birmingham*, No. 98-AR-2100-S, 2000 WL 1608620, at *3 (N.D. Ala. Jan. 20, 2000) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

To satisfy the similar[ly situated] prong, the comparator's [situation] must be nearly identical to the plaintiff's in order 'to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges.' " *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir.2001) (citation omitted). The "similarly situated" prong of the prima facie test is important because no presumption of discrimination arises from facts indicating that a defendant treated dissimilar persons differently. *See Id.*

Forte has failed to show that the supplemental services she provides to the Board, and hence, the amount of time she is required to work after school and during the summer makes her similarly-situated "in all relevant aspects" to her male comparators.

By Forte's own admission, she had the following additional duties that her male

5

comparators did not have. Specifically, she was required to (1) install newly purchased software; (2) assist teachers with minor computer problems; (3) complete school system annual technology plans; (4) meet with each school's technology coordinator and technology committee; (5) conduct technology training with various teachers; (6) supervise the school's technology sources; and (7) consult with various repair people and providers. Furthermore, Forte's technology coordinator work was not limited to Greene County High School but was system-wide. The fundamental difference in the nature of Forte's job as compared to the jobs of her male comparators is fatal to her disparate treatment claim. It is undisputed that plaintiff was paid more than double the amounts paid to her male comparators by the Board. Although not dispositive, the disparity in pay between Forte and her male comparators clearly illustrates the fundamental differences between the type of additional services provided by Forte and those provided by her male comparators.

The court also agrees with the defendants' argument that coaching is seasonal and limited to a finite period of time. For example, the undisputed evidence establishes that Austin's duties as a baseball coach only require him to work from February to April. Similarly, his football coaching duties only require that he work from August to December. Consequently, a juror could reasonably conclude that Austin was not required to work during the summer because the nature of the supplemental duties he provided to the Board did not require him to do so.

The above-referenced analysis also applies to Garnett. Nothing in the record indicates that the nature of Garnett's supplemental duties as a bus driver required him to work during the summer. The court also rejects the plaintiff's attempt to compare her duties as a part-time technology coordinator with Garnett's job as a part-time summer maintenance mechanic because both jobs required Forte and Garnett to work during the summer months as a condition of receiving payment.

Simply put, the plaintiff's dissatisfaction with her salary, without evidence of a similarly-situated male comparator, is insufficient to establish a prima facie case of disparate treatment under Title VII and 42 U.S.C. § 1983.

**B. Retaliation Claims**

Forte's denial of her part-time salary as technology coordinator in September and October of 2001 does not rise to the threshold level of substantiality to constitute the requisite adverse employment action needed to establish a prima facie case of retaliation. To establish a prima facie case of retaliation, plaintiff must establish that (1) she engaged in a statutorily protected expression; (2) she was subjected to an adverse employment action; and (3) there is a causal link between the adverse employment action and the protected activity. *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

"An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta*, 212 F.3d at 587. The Eleventh Circuit has not adopted a bright-line test for determining when the challenged conduct constitutes an adverse employment action but clearly holds that "some threshold level of substantiality . . . must be met for unlawful discrimination to be cognizable." *Stavropoulos v. Firestone*, No. 02-16486, 2004 WL 345864, at *5-6 (11th Cir. February 25, 2004); *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001); *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998).

In *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), the Eleventh Circuit further clarified the standard for determining if the challenged employment action satisfies a threshold level of substantiality. The *Davis* court rejected the plaintiff's argument that memos in

his personnel file memorializing workplace violations and substandard job performances were adverse employment actions because they resulted in diminished self-esteem and potentially interfered with unspecified and unexplored future job prospects. 245 F.3d at 1239. Specifically, the court held that:

> [A]n employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

It is undisputed that Forte was ultimately reimbursed in November 2001 for the entire amount withheld from her check. Furthermore, plaintiff continued in her position as part-time coordinator, even signing a contract on December 12, 2001 to be the Board's part-time technology coordinator for the 2001-2002 school year. Forte continued as the part-time coordinator until the Board decided to abolish all supplemental positions in April 3, 2002. Plaintiff's counsel conceded at oral argument that Forte did not suffer any material loss of pay, benefits, or any serious and material change in the nature of her employment as a result of the two month denial of her salary as a part-time technology coordinator.

Given the undisputed evidence establishing that Forte incurred no serious and material changes in the terms and conditions of her employment, the court concludes that the two-month denial of her part-time technology coordinator salary that was subsequently rectified in November 2001 does not rise to the threshold level of substantiality to constitute an adverse employment action. *Cf., Stavropoulos*, 2004 WL 345864 at *5-6 (holding that because the acts that plaintiff complained of had no net effect on her employment status, the acts were not objectively serious and tangible to constitute adverse employment actions); *Pennington*, 261 F.3d at 1267 (holding that

initial decision not to promote plaintiff that did not cause loss of pay or employment benefits was not an adverse employment action); *Davis*, 245 F.3d at 1239, 1244 (holding that when a reassignment involves no serious and material change in the terms, conditions, or privileges of employment, courts should not sit as a "super-personnel department by questioning the employer's work-related decisions.").

The above-referenced analysis also applies to the October 11, 2001 incident involving Morrow's threat to write Forte up for insubordination and Morrow's threat to disapprove approve Forte's purchase orders until the completion of the "e-rate" application process. It is undisputed that, despite Morrow's threats, Forte was never reprimanded for insubordination. The same reasoning applies to the alleged threat made by Morrow not to approve any of Forte's purchase orders until the completion of the "e-rate" application process. The record contains no evidence that Morrow ever carried out this directive or that the application of this directive would have seriously and substantially altered the terms and conditions of Forte's employment. *Cf.*, *Pennington*, 261 F.3d at 1267 (adopting reasoning from other circuits that the employer's decision to reprimand an employee, if rescinded before tangible harm occurs, is not an adverse employment action). Consequently, the court concludes that the court has not established a prima facie case of retaliation.

### C. Constructive Discharge Claim

A constructive discharge occurs when a discriminatory employer imposes working conditions that are "so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (quotation marks and citation omitted). Forte does not provide the court with any objective evidence that the two months that Forte did not receive her supplemental salary as a part-time

technology coordinator was so intolerable so as to negatively impact the terms and conditions of her employment. As noted in section B of this Memorandum Opinion, it is undisputed that Forte was ultimately reimbursed in November 2001 for the entire amount that was witheld from her check. Furthermore, plaintiff continued in her position as part-time coordinator, even signing a contract on December 12, 2001 to be the Board's part-time technology coordinator for the 2001-2002 school year. Forte continued as the part-time coordinator until the Board decided to abolish all supplemental positions in April 3. 2002. Given this undisputed evidence, the court concludes that plaintiff has not created a genuine issue of material fact to preclude summary judgment on her constructive discharge claim.

Based on the foregoing analysis, the court concludes that the defendants' motion for summary judgment is due to be granted in its entirety. Furthermore, the court declines to exercise supplemental jurisdiction of the state law claims and counterclaims under 28 U.S.C. § 1367.

A separate final order will be entered.

DONE and ORDERED this __17th__ day of March, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE